CLERK
US DISTRICT & BANKRUPTCY
COURTS

2019 NOV -8 PM 10: 59

RECEIVED

Blackmon-Malloy, et al

Plaintiffs,

v.

United States Capitol Police Board

Defendant

Civil Case No: 1:01-cv-02221-EGS
Honorable Emmet G. Sullivan

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
## PLAINTIFF'S SUPPLEMENTAL BRIEFING

Plaintiff Frank Adams, by and through his own pro se representation, respectfully replies to Defendant's Response to the Supplemental Briefing filed by Plaintiff pursuant to the Court's order [# 429] 10/13/2016 that stated, *"With regard to Lt. Adams' claims in the main case, except for Lt. Adams' claim for hostile work environment created by racist words, it is not clear which of Lt. Adams' claims in the Fourth Amended Complaint correlate to the claims that Magistrate Judge Facciola recommended survive in his 2007 Report and Recommendation.*

*Compare ECF No. 278 with ECF No. 151-1 and ECF No. 376 at 17-18, App. B. Consequently, by no later than 14 days after the Court issues the Final Order associated with this Memorandum Opinion, plaintiffs shall file a supplemental briefing regarding Lt. Adams' claims in the main case as set forth in Appendix I to this Memorandum Opinion and identify which claims in the Fourth Amended Complaint correlate to the claims listed in ECF No. 151-1. Following the response and the reply, the Court will determine which of Lt. Adams' claims in the main case may proceed. The Court will only consider argument on claims in the main case."*



RECEIVED
Mail Room

NOV 12 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Plaintiff requested in his supplemental brief that he be given leave by this Honorable Court to amend his brief upon further instruction and guidance from the Court in lieu of the dismissal of any of his claims, provided he has misinterpreted the Court's order regarding the brief and the level of specificity required.

Plaintiff renews this request in light Defendant's response and Plaintiff's recent discovery of the chart at [#141-1]. Plaintiff therefore clarifies his brief by aligning the 17 claims of adverse employment actions alleged in the chart at [#141-1], with the 17 claims in the chart at [#151-1], and correlates those claims pursuant to the Court's 10/13/2016 order [# 429].

### History

**I.**     June 20, 2006, Plaintiff's previous counsel filed a chart at the direction of the Court articulating his claims [#141-1].   Judge Facciola relied upon this chart when he issued his Report and Recommendation on March 19, 2007 [#151-1].

**II.**     March 19, 2007, Judge Facciola's Report and Recommendation [#ECF151-1] listed 17 viable claims from the main case that should proceed. Those claims correspond to the claims Plaintiff previously submitted to the Court for Judge Facciola's consideration in ECF [#141-1].

**III.**     May10, 2010, Plaintiff's previous Counsel filed a Forth Amended Complaint [#278] that included the following:

(P.10, ¶30) - Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white Officers in hostilities towards Plaintiff Adams in an effort to force him to request an assignment to another division. He was subsequently involuntarily transferred. Management ordered

Lt. Adams to change the performance rating of an undisciplined, disruptive K-9 Officer and to remove instructive entries regarding the negative performance of other white Officers from their Unit Personnel Records.

(P. 11, ¶31) - Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him. The U.S. Capitol Police published throughout the department the inaccurate findings from an investigation of a complaint that a white Officer made against Lt. Adams.

(P. 11, ¶32) - Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001), 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). Lt. Adams' aforesaid facts and claims are incorporated into this Complaint and made a part hereof."

(P. 26, ¶67) - Plaintiff Frank Adams was also subjected to retaliation from upper management for filing complaints of discrimination. His supervisor, Captain Preloh, reprimanded him for following direct orders from a higher-ranking Lieutenant. Captain Preloh disregarded the performance rating issued to Lt. Adams by his commanding supervisor, which impeded his opportunity for promotion. In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs. Ultimately, Chief Varey himself authorized that corrective documentation be placed in Lt. Adams' personnel file and published in official department correspondence, regarding the findings of this flawed investigation. These continuous, pervasive adverse employment actions not only hindered Lt.

Adams' ability to advance in his career, but they substantially damaged his reputation, emotional well-being, and ability to perform his duties effectively."

**IV.**   December 14, 2012, Judge Facciola issued a Report and Recommendation [#376] stating:

(P. 17, No. 1, ¶1) - "The defendant concedes that Lt. Adams has at least one viable claim for discrimination [#365] at 25. Lt. Adams originally alleged 57 different incidents spanning the period between November 30, 1994 and July 1, 2004. [#151] at 8-9. Many of those claims were dismissed as untimely, as a request for counseling was not submitted within 180 days of the alleged violation. Id. I allowed 33 of those claims to go forward. Id.; see also [#151-1] at 1. I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.

(P. 17-18, No. 1, ¶2) - The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9. Defendant also concedes, via its reply to plaintiffs' opposition to the motion to dismiss, that Adams "appears timely for his non-selection to John Hopkins PELP program (August 28, 2003), non-selection to a management college (September 11, 2003), non-selection to the FBI Academy (October 27, 2003), threat of transfer (November 3, 2003), and involuntary transfer (November 6, 2003)" claims, as well as his non-selection to Captain claim dated Nov. 24, 2005. [#365] at 30. Those Case 1:01-cv-02221-EGS Document 376 Filed 12/14/12 Page 18 of 41 claims, asserted in Civil Action Nos. 04-0943 and 06-0653, respectively, should therefore go forward. These claims were previously dismissed without prejudice "until such evidence is provided" establishing exhaustion. [#151] at 10. ....... the defendant concedes jurisdiction, so these claims should survive."

4

V.      September 19, 2019, Plaintiff filed a Supplemental Briefing pursuant to the Court's
        order [# 429] 10/13/2016.

VI.     October 07, 2019 [#492] Defendant filed its Response to Plaintiff's Supplemental
        briefing.

## Plaintiff's Argument

Defendant's Response appears to be evidentiary rather than exhaustive or jurisdictional
and not ripe for consideration until, if or when, Defendant files its dipositive motions.  This
Honorable Court did not order Plaintiff to state a claim for which relief may be granted, nor did
it require Plaintiff to articulate genuine issues of material facts in dispute or to provided evidence
in support of his claims.  The Court simply ordered Plaintiff to correlate the 17 claims alleged by
Plaintiff that were deemed viable by Judge Facciola in his March 19, 2007, Report and
Recommendation [#151-1] with the May 10, 2010, Forth Amended Complaint [#278], and the
December 14, 2012, Report and Recommendation [#376, p.17-18].

Plaintiff refutes Defendant's argument that "Adams' supplemental briefing "correlates only 6
of the 17 lines in ECF #151-1 to the Fourth Amended Complaint, and does nothing to explain the
correlation between any of the 17 pertinent lines in the Report and Recommendation and the
Fourth Amended Complaint."  Notwithstanding, Plaintiff's Reply clarifies his brief with greater
specificity by aligning each of the 17 viable claims in [#151.1] with the claims alleged in [#141-
1) and correlating those claims along with page numbers and paragraphs with the Fourth
Amended Complaint [#278] and Report and Recommendation [#376, p. 17-18].

The claims and line numbers may deviate from Plaintiff's previous brief because the chart at [#141-1] refreshed Plaintiff's memory regarding the claims Judge Facciola relied upon in his Report and Recommendations at [#151-1] which through inadvertence Plaintiff did not include in his supplemental brief.

**<u>Claim - Line 1</u>: (11/11/2000) Discipline, HWE - ECF [#151-1]**

The Department refused to investigate Plaintiff's charges against a hostile, undisciplined white officer, yet internal Affairs Division investigated Plaintiff' and charged him based on the officer's frivolous charges.

Plaintiff was investigated by Internal Affairs Division for discourtesy after Plaintiff filed charges of insubordination against Charles McQuay, a lower ranking white police officer who came into Plaintiff's work place during his tour of duty and in a very loud tone of voice publicly accused Plaintiff in front of his subordinate officers of being a "bad official." Plaintiff initiated a Command Discipline (CP-534) against the officer but the Department refused to investigate; instead, investigated the frivolous charge of discourtesy alleged by the insubordinate white officer against Plaintiff. **Exhibit G [#473].**

**Correlating with ECF [#278] Forth Amended Complaint**

<u>(P. 10, ¶30)</u>. *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams. He was subsequently involuntarily transferred.*

(P. 11, ¶31). *Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

(P. 26, ¶67). ... ...*In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs. Ultimately, Chief Varey himself authorized that corrective documentation be placed in Lt. Adams' personnel file and published in official department correspondence, regarding the findings of this flawed investigation.*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25 ... ... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

## Claim - Line 2: (11/16/2000) Discipline, HWE - ECF [#151-1]

Plaintiff was investigated by Internal Affairs due to a frivolous complaint initiated by a hostile undisciplined K-9 officer, Technician D. Davis. IAD investigated the allegation that Plaintiff told the officer to "Have a nice Day." The Department refused to investigate serious charges made by Plaintiff against white officers for making "Untruthful Statements" and "Insubordination" yet Internal Affairs investigated Plaintiff for telling an officer to have a nice day. **Exhibit H [#473].**

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams....He was subsequently involuntarily transferred.*

(P. 11, ¶31). *Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

(P. 26, ¶67). ....*In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs.*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant concedes in its Response - "Defendant interprets this claim as correlating to ¶ 31 (subjected to numerous frivolous investigations) and ¶ 67 of the Fourth Amended Complaint." Plaintiff agrees but includes the additional beforementioned correlations as well.

## Claim - Line 3: (11/17/2000) HWE - ECF [#151-1]

"HUK" is a derogatory word used by white officers on Patrol Division to depict black officers and citizens. The word is meant to be equivalent to the word "nigger." An entry was placed in the incidental book stating "There is a new canine at Blue Plains canine training. The canine's name is Huk." A white official continued a hostile work environment with racist words by reading the entry at roll call. The new canine "HUK" was a black dog. **Exhibit F [#473].**

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30).  *Lieutenant Frank Adams was subjected to the racially hostile work*
*environment on the U.S. Capitol Police force. While assigned to the Patrol Division,*
*white management officials allowed, encouraged, and participated with white officers*
*in hostilities towards Plaintiff Adams ….He was subsequently involuntarily*
*transferred.*

Correlating with ECF [#376] p. 17-18

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for*
*discrimination. [#365] at 25.*

(P. 17, No. 1, ¶2).  *The defendant previously conceded jurisdiction for Lt. Adams's hostile*
*work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant stated in its Response: "This Claim makes no mention of Adams, and instead
alleges that it was Plaintiff Ikard who was the subject of a racially hostile environment… and
that Adams' supplemental briefing does nothing to assert that he too was subject to this."

Plaintiff avers that "Huk" is recognized by blacks as a racist term used by whites to
disparage blacks. The term is offensive and public use of the word created a hostile work
environment for Plaintiff Ikard, Plaintiff Adams and other blacks on Patrol Division. The
hostilities were intensified when the Department named a dog "Huk" and had the audacity to
announced the naming of the dog at an official Department roll-call.

### Claim - Line 4: (11/20/2000) HWE - ECF [#151-1]

Plaintiff became aware that white officers referred to black officers and black citizens of
DC as "Gangsters". A white Sergeant was confronted by a crime scheme search officer and
accused of being a "FOG" which is an acronym for "Friend of Gangsters." The white Sergeant
reported that he was advised that he needed to take sides. He was told that white officers were

examples of who he should side with. These officers discussed ways to get black supervisors on Patrol Division (including Plaintiff) in trouble. **Exhibit D [#473].**

### Correlating with ECF [#278] Forth Amended Complaint

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams......*

### Correlating with ECF [#376] p. 17-18

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25.*

(P. 17, No. 1, ¶2). *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant states in its Response - "Although this claim appears to relate to ¶ 18 of the Fourth Amended Complaint, that paragraph makes no mention of Adams and instead alleges that it was Plaintiff Ikard who was subjected to this language."

Plaintiff avers that Defendant acknowledged the Fourth Amended complaint alleged Officer Ikard was subjected to a racially hostile work environment in which white Officers referred to African Americans, whether fellow Officers or members of the public, as "Huks" or "gangsters," and characterized the D.C. Metropolitan Police Department as the "ghetto police." Officer Ikard and Plaintiff Adams, both African Americans, worked in the same unit on the same shift and in the same hostile environment so by default the terms "gangsters" and "Huks" as used

on P. 9, ¶ 18 [#278] applies to Plaintiff Adams as well as Officer Ikard and other African Americans. This claim corelates with ¶ 18 [#278] as well the beforementioned correlations.

## Claim - Line 5: (11/30/2000) Discipline, HWE - ECF [#151-1]

Plaintiff became aware that his supervisor, an investigating official, secretly gave a document that Plaintiff submitted in his own defense as a part of an official Department investigation to the complainants in the investigation. This is the same supervisor who attempted to prevent Plaintiff from getting a promotion to Lt. when he unjustly gave Plaintiff one of the lowest PRS scores in the promotional process for Lieutenant. **Exhibit I [#473].**

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff…..He was subsequently involuntarily transferred.*

(P. 11, ¶31). *Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

12

(P. 26, ¶67). *Plaintiff Frank Adams was also subjected to retaliation from upper management for filing complaints of discrimination. .......In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs.*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant concedes in its Response - "This appears to correlate to ¶¶ 31 and 67 of the Fourth Amended Complaint." Plaintiff agrees but includes the additional beforementioned correlations as well.

## Claim - Line 6: (12/01/2000) Discipline, HWE - ECF [#151-1]

Plaintiff was removed from the investigation of a white officer who was accused of violating the civil rights of a black citizen. The investigation was given to a white sergeant apparently to prevent Plaintiff from finding in favor of the citizen.

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division,*

*white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams...*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25.*

(P. 17, No. 1, ¶2).  *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant stated in its Response - Plaintiff "cites no evidence, nor provides any additional detail. This claim has no apparent correlation to any claim in the Fourth Amended Complaint."

Plaintiff avers that his supplemental brief was not intended to prove but to correlate his claims. However, he looks forward to proving his case once dispositive motions are responded to and discovery has concluded. Notwithstanding, management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams in this instance by not allowing Plaintiff Adams, a black supervisor, to conduct the investigation of a white police officer which diminished Plaintiff's supervisory authority while sustaining a Hostile Working Environment that allowed white, undisciplined officers to disregard the supervision of black supervisors. This claim correlates with the Fourth Amended Complaint and ECF [#376] as stated.

## Claim - Line 7: (12/10/2000) HWE - ECF [#151-1]

Plaintiff wrote a letter to the Chief of Police charging hostile work environment on Patrol Division and discrimination in the K-9 selection process against blacks and females. Charges were never seriously investigated. **Exhibit L [#473].**

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams....*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25.*

(P. 17, No. 1, ¶2). *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant stated that "Adams' memo, however, describes only harm to other officers, such as unfair performance evaluations of other Plaintiffs, and racist remarks made to others."

Plaintiff avers that The United States Capitol Police K-9 Section, assigned to Patrol Division, is one of the most racist and sexist units on the entire United States Capitol Police Department. Plaintiff was required to supervise hostile undisciplined officers and witness the discrimination against blacks and females yet was powerless without the support of the Chief or supervisors within his chain of command to implement change. Plaintiff was transferred as a result of his opposition to the hostile, discriminatory environment.

Plaintiff attempted change the environment by advising Inspector Parisi that Officer Ikard and Officer Web were discriminated against and denied positions in the K-9 section while a disruptive, undisciplined white K-9 Technician, who had been arrested twice for DWI/DUI and received several CP 535's, was allowed to remain on the unit continuing to make arrests for violations of the law that he himself had been convicted of.  Inspector Parisi made no efforts to

remove him from the unit or to make the K-9 selection process fair for blacks and females. The Chief of Police never investigated Plaintiff's charges of a Hostile Work Environment in spite of being put on notice. Rather than correct the hostilities by holding those responsible accountable, the Chief transferred Plaintiff Adams.

### **Claim - Line 8: (12/13/2000) HWE - ECF [#151-1]**

Department's Labor Relation's Specialist refused to provide Plaintiff with requested support.

**Correlating with ECF [#278] Forth Amended Complaint**

<u>(P. 10, ¶30).</u> *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams….*

**Correlating with ECF [#376] p. 17-18**

<u>(P. 17, No. 1, ¶1)</u> - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25.*

(P. 17, No. 1, ¶2).   *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant stated in its Response - "This claim has no apparent correlation to any claim in the Fourth Amended Complaint, still less one that pertains to Adams."

Plaintiff avers that Department's Labor Relation's Specialist serves a managerial function supporting managers and supervisors in resolving issues with the Union. Plaintiff was under constant attack by rank and file K-9 and Patrol Division officers represented by the Union. Plaintiff asked the Labor Relation's Specialist who is white for support in resolving issues with

the Union and she refused. Plaintiff views this as an official who allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams.

**<u>Claim - Line 9</u>: (12/23/2000) HWE - ECF [#151-1]**

Inspector Parisi ordered Plaintiff to change or falsify the performance evaluation of a disruptive undisciplined K-9 officer. **Exhibit A [#473].**

**Correlating with ECF [#278] Forth Amended Complaint**

<u>(P. 10, ¶30)</u> - *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff. Management ordered Lt. Adams to change the performance rating of an undisciplined, disruptive K-9 Officer and to remove instructive entries regarding the negative performance of other white Officers from their Unit Personnel Records.*

<u>(P. 11, ¶32)</u> - *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001),* 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint and made a part hereof."*

**Correlating with ECF [#376] p. 17-18**

<u>(P. 17, No. 1, ¶)</u> - *"The defendant concedes that Lt. Adams has at least one viable claim for discrimination [#365] at 25. ….I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17-18, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case.*

Defendant concedes in its Response – "This claim appears to correlate with ¶ 30 of the Fourth Amended Complaint." Plaintiff agrees Plaintiff agrees but includes the additional beforementioned correlations as well.

## Claim - Line 10: (01/07/2001) Discipline, HWE - ECF [#151-1]

Plaintiff filed charges against an undisciplined white patrol officer (Roberts) for making untruthful statements. Charges were never sufficiently of seriously investigated. **Exhibit E [#473].**

### Correlating with ECF [#278] Forth Amended Complaint

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams*

(P. 11, ¶31). *Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims*

*are incorporated into this Complaint an made a part thereof."*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25 ...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant concedes in its Response – "This claim appears to correlate with ¶ 31 of the Fourth Amended Complaint." Plaintiff agrees but includes the additional beforementioned correlations as well.

## Claim - Line 11: (01/12/2001) Discipline, HWE, Retaliation - ECF [#151-1]

Plaintiff wrote a letter to the Chief informing him that the Captain (Preloh) retaliated against him in the Promotional process because of Plaintiff's intolerance to the racially hostile environment on Patrol Division. The D/C responded in support of the Captain's actions.

**Exhibit B [#473]**

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S.*

*District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

(P. 26, ¶67). *Plaintiff Frank Adams was also subjected to retaliation from upper management for filing complaints of discrimination. Captain Preloh disregarded the performance rating issued to Lt. Adams by his commanding supervisor, which impeded his opportunity for promotion. In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs.*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile*

Defendant concedes that "This claim appears to correlate to ¶ 67 of the Fourth Amended Complaint." Plaintiff agrees but includes the additional beforementioned correlations as well.

## Claim - Line 12: (01/21/2001) HWE - ECF [#151-1]

Plaintiff wrote a letter to internal affairs notifying them of the hostile environment on Patrol Division. Internal Affairs failed to properly investigate Plaintiff's charges. **Exhibit N [#473].**

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30).   *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams. …He was subsequently involuntarily transferred.*

(P. 11, ¶31). *Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

(P. 26, ¶67). *Plaintiff Frank Adams was also subjected to retaliation from upper management for filing complaints of discrimination. Captain Preloh disregarded the performance rating issued to Lt. Adams by his commanding supervisor, which impeded his opportunity for promotion. In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs.*

Correlating with ECF [#376] p. 17-18

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. *17, No. 1,* ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Defendant stated in its Response that "Plaintiff failed to allege that the failure to investigate resulted in harm to Adams."

Plaintiff avers that he was harmed when Internal Affairs failed to properly investigate Plaintiff's charges. He dropped several slots down on the Lieutenant's promotional list and a counseling note citing "discourtesy" was place in his personnel file. Plaintiff was also humiliated when the white, hostile officer (McQuay) suffered no consequences for his insubordinate behavior towards Plaintiff, an African American supervisor who received no support from his chain of command.

### Claim - Line 13: (01/22/2001) HWE - ECF [#151-1]

Plaintiff became aware that a white female (Patrol Division administrative staff) reported that she had been solicited by two USCP Sergeants (one from PD and the other from Communications Section), to go with them to Georgetown and subscribe to a gay newspaper in Plaintiff's name and have it mailed to Patrol Division in an attempt to embarrass Plaintiff. This incident was reported to Inspector Parisi, Commander of Patrol Division who refused to investigate.

Correlating with ECF [#278] Forth Amended Complaint

*(P. 10, ¶30). Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams in an effort to force him to request an assignment to another division. He was subsequently involuntarily transferred.*

*(P.11, ¶32). Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

Correlating with ECF [#376] p. 17-18

*(P. 17, No. 1, ¶1) - The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

*(P. 17, No. 1, ¶2) - The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

## <u>Claim - Line 14</u>: (06/09/2000) HWE - ECF [#151-1]

Plaintiff filed charges against Officer DeCarlo, a Union Rep for filing false accusations against Plaintiff in behalf of several, hostile undisciplined USCP and MPD officers who were unhappy that Plaintiff release a black male who they had unlawfully detained. Plaintiff was

investigated and exonerated by IAD regarding the false accusations by DeCarlo yet, DeCarlo was never investigated or disciplined.

Correlating with ECF [#278] Forth Amended Complaint

(P. 10, ¶30).   *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams in an effort to force him to request an assignment to another division. He was subsequently involuntarily transferred.*

(P. 11, ¶31).   *Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him.*

(P.11, ¶32).   *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

(P. 26, ¶67). … …*In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs.*

**Correlating with ECF [#376] p. 17-18**

<u>(P. 17, No. 1, ¶1)</u> - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

<u>(P. 17, No. 1, ¶2)</u> - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

## <u>Claim - Line 15</u>: (11/20/2000) HWE - ECF [#151-1]

Management continually disregarded Plaintiff's recommendations by refusing to sufficiently discipline officers for violations of Department policy as well as violations of the law; e.g. A hostile white K-9 Technician was accused by a white female rookie that Plaintiff assigned as his ride along in training of: (a). Ordering her to falsify traffic tickets, (b). Lying to the dispatcher, (c). Violating a female citizen's rights during a traffic stop, and (d). Advising the female rookie that she would never be a K-9 officer unless she was a "Dyke" (lesbian) then asked her, "Are you a Dyke?" Plaintiff learned that the K-9 officer received discipline amounting to a slap on the wrist for his egregious behavior in complete dichotomy and disregard with Plaintiff's recommendations.

Plaintiff provided this information to Inspector Parisi and upon Plaintiff's best information and belief, Parisi did not submit the allegations to IAD; instead, the allegations were handled within the Patrol Division by Parisi and Captain Preloh. The rookie female officer, who expressed her desire to become a K-9 officer, was subsequently targeted as being a "Snitch" by

other officers for informing on K-9 Technician and was harassed until she resigned a short time afterwards.

This case affected Plaintiff emotionally because of his belief that a hostile work environment that targets females and blacks affect not only the person directly targeted but others, like himself with a title (Plaintiff was a Sergeant at the time) but no authority to prevent the hostilities due to the institutionalized racist and sexist practices of white police officers on Patrol Division and USCP management.

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30).  *Lieutenant Frank Adams was subjected to the racially hostile work environment.*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25.*

(P. 17, No. 1, ¶2).  *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

## Claim - Line 16: (01/11/2001) Promotion, HWE, Retaliation - ECF [#151-1]

Captain Dicks harassed Plaintiff with a memo to his Section Commander stating that Plaintiff was a few days late in submitting an annual performance rating for one of Plaintiff's officers without a valid, legitimate, business, non-discriminatory reason for doing so in order to justify a "Don't Promote" recommendation on April 2, 2001 for Plaintiff Adams in the Lieutenant's promotional process.

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30).  *Lieutenant Frank Adams was subjected to the racially hostile work*

*environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams….He was subsequently involuntarily transferred.*

(P. 11, ¶31). *Lt. Adams was subjected to many unsubstantiated and frivolous investigations by the Internal Affairs Division, and management refused to investigate his charges against white subordinate Officers who made untruthful and unsupported allegations against him.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

(P. 26, ¶67). ….*In addition, Captain Preloh and Inspector Parisi participated in and supported the making of false accusations against Lt. Adams, which in turn led to an investigation by Internal Affairs.*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25…… I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

**Claim - Line 17**: **(03/30/2001) HWE - ECF [#151-1]**

The Department attempted to embarrass Plaintiff when it published distortions and lies about him in an official department publication. **Exhibit K [#473]**

**Correlating with ECF [#278] Forth Amended Complaint**

(P. 10, ¶30). *Lieutenant Frank Adams was subjected to the racially hostile work environment on the U.S. Capitol Police force. While assigned to the Patrol Division, white management officials allowed, encouraged, and participated with white officers in hostilities towards Plaintiff Adams in an effort to force him to request an assignment to another division. He was subsequently involuntarily transferred.*

(P.11, ¶32). *Lt. Adams' primary discrimination facts and claims are set forth in four U.S. District Court cases against the U.S. Capitol Police, which have the following case numbers: 01-2221 (filed October 29, 2001)*, 04-0943 (filed June 9, 2004), 05-0491(filed March 10, 2005), and 06-0653 (filed April 10, 2006). *Lt. Adams' aforesaid facts and claims are incorporated into this Complaint an made a part thereof."*

(P. 26, ¶67). *Plaintiff Frank Adams was also subjected to retaliation from upper management for filing complaints of discrimination.*

**Correlating with ECF [#376] p. 17-18**

(P. 17, No. 1, ¶1) - *The Defendant concedes that Lt. Adams has at least one viable claim for discrimination. [#365] at 25...... I recommend that the court maintain jurisdiction over those actions that survived in my previous Report and Recommendation.*

(P. 17, No. 1, ¶2) - *The defendant previously conceded jurisdiction for Lt. Adams's hostile work environment and adverse actions claims filed in the lead case. [#151] at 9.*

Plaintiff respectfully asks the Court to consider, in addition to specific claims in ¶ 30, ¶ 31, ¶ 32, and ¶ 67 of the Forth Amended Complaint, the following paragraphs as well, that generally pertain to all of Plaintiff's claims in [#151] and correlates with (P. 17, No. 1, ¶1) and (P. *17, No. 1,* ¶2) [#376].

¶ 12. The conduct of certain white Officers toward Black Officers unreasonably interfered with the Black Officers' work performance because it was frequent, severe, humiliating, intimidating, and on occasion physically threatening.

¶ 13. In fact, the systemic harassment and hostile work environment did alter the terms, conditions, and privileges of the Black Officers of the U.S. Capitol Police so that they were forced, inequitably, to endure physically more demanding conditions and greater psychological stress and intimidation on the job.

¶ 15. The U.S. Capitol Police knew or should have known of the racial harassment and hostile work environment and failed to take proper remedial action.

¶ 18. Among the many egregious examples of racist insults and threats were those experienced by Plaintiff Larry "Ike" Ikard (now deceased). Officer Ikard was subjected to a racially hostile work environment in which white Officers referred to African Americans, whether fellow Officers or members of the public, as "Huks" or "gangsters," and characterized the D.C. Metropolitan Police Department as the "ghetto police."

## CONCLUSION

Plaintiff asks this Honorable Court to find that 17 of the 17 claims described in this Reply correlate to the allegations in the Fourth Amended Complaint.

Respectfully submitted,

11/08/2019

Frank Adams
5817 South Marwood Blvd
Upper Marlboro, Md 20772

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing, Plaintiff's Reply to Defendant's Response to Plaintiff's Supplemental Briefing, was served on November 9, 2019 by United States first class mail, postage prepaid mail, upon:

ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
United States Attorney's Office, Civil Division 555 Fourth St.,NW
Washington, DC 20530

Frank Adams
5817 South Marwood Blvd
Upper Marlboro, Md 20772