**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHARON BLACKMON-MALLOY, *ET AL.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:01-CV-02221 (EGS) |
| | ) | |
| UNITED STATES CAPITOL POLICE | ) | |
| BOARD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF**
**ARNOLD FIELDS' CLAIMS**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. ii

**INTRODUCTION** ............................................................................................................... 1

**ARGUMENT** ....................................................................................................................... 1

   I.   PLAINTIFF'S OPPOSITION CITES NO FACTS THAT SUPPORT ACTIONABLE HOSTILE WORK ENVIRONMENT, DISCRIMIANTION, OR RETALIATION CLAIMS IN *FIELDS I.* ..................................................................................... 1

     A.   Plaintiff Provides No Facts That The USCP Engaged In Abusive Conduct That Altered Plaintiff's Working Conditions. ....................................................... 2

     B.   Plaintiff Provides No Facts Indicating That He Suffered Any Adverse Action Or Material Adverse Action. .......................................................................... 7

     C.   Plaintiff Provides No Facts Indicating That The Challenged Actions Resulted Because Of His Race Or Protected Activity. ............................................... 9

  II.   PLAINTIFF'S OPPOSITION CITES NO FACTS THAT SUPPORT ACTIONABLE HOSTILE WORK ENVIRONMENT, DISCRIMINATION, OR RETALIATION CLAIMS IN *FIELDS II.* ................................................................................... 10

     A.   Plaintiff Provides No Facts That The USCP Engaged In Abusive Conduct That Altered Plaintiff's Working Conditions. ..................................................... 10

     B.   Plaintiff Provides No Facts Indicating That He Suffered Any Adverse Action Or Material Adverse Action. ........................................................................ 14

     C.   Plaintiff Provides No Facts Showing A Plausible Connection Between His Race Or Alleged Protected Activity And The Conduct He Challenges. ................ 15

  III.  PLAINTIFF'S OPPOSITION CITES NO FACTS THAT SUPPORT ACTIONABLE HOSTILE WORK ENVIRONMENT, DISCRIMINATION, RETALIATION CLAIMS IN *BOLDEN-WHITAKER.* ................................................................................ 15

**CONCLUSION** ................................................................................................................ 17

i

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(s)**

*Adams v. Dist. of Columbia*, 50 F. Supp. 3d 47 (D.D.C. 2014),
   *Aff'd* 618 Fed. Appx. 1 (D.C. Cir. 2015) .......................................................4

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009).......................................................2, 9

*Baird v. Gotbaum*, 888 F. Supp. 2d 63 (D.D.C. 2012) ...................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2004) ……………………………………….2

*Brooks v. Grundmann*, 748 F.3d 1273 (D.C. Cir. 2014)................................11

*Brown v. Mills*, 674 F. Supp. 2d 182 (D.D.C. 2009) .....................................14

*Childs-Pierce v. Utility Workers Union of America*,
   383 F. Supp. 2d 60 (D.D.C. 2005)....................................................6

*Clark v. Johnson*, 206 F. Supp. 3d 645 (D.D.C. 2016)..................................14

*Douglas v. Donavan*, 559 F.3d 549 (D.C. Cir. 2009)......................................7

*Forkkio v. Tanoue*, 131 F. Supp. 36 (D.D.C. 2001)..................................... 4-5

*Ginger v. Dist. of Columbia*, 477 F. Supp. 2d 41 (D.D.C. 2007) ..................13

*Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277 (D.D.C. 2017).....................17

*Harris v. Forklift Sys. Inc.*, 510 U.S. 17 (1993).................................................2

*Herbert v. Architect of Capitol*, 839 F. Supp. 2d 284 (D.D.C. 2012)............................14

*Jimenez v. McAleenan*, 393 F. Supp. 3d 22 (D.D.C. 2019) ............................11

*Jones v. Castro*, 168 F. Supp. 169 (D.D.C. 2016) ...................................11, 14

*King v. Pierce Assocs., Inc.*, 601 F. Supp. 2d 245 (D.D.C. 2009 ....................9

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ………………………….8, 10

*Kruger v. Cogent Commc'ns, Inc.*, 174 F, Supp, 3d 75 (D.D.C. 2016)................... 11-12

*Munro v. LaHood*, 839 F. Supp. 2d 354 ((D.D.C. 2012) …………………………………..3

*Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.,*
  867 F.3d 70 (D.C. Cir. 2017) vacated by 697 Fed. App'x 6 (D.C. Cir 2017)…………13

*Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158 (D.D.C. 2012) ...................................8

*Redmon v. United States Capitol Police,* 8 F. Supp. 3d 79 (D.D.C. 2013) .....................7

*Singletary v. Dist. of Columbia,* 351 F.2d 519 (D.C. Cir. 2003)……………………………5

*Slate v. Pub. Def. Serv. for the Dist. of Columbia,*
 31 F. Supp. 3d 277 (D.D.C. 2007) ………………………………………………………..11, 12

*Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62 (D.D.C. 2019)....................................6

*Turner v. United States Capitol Police Bd.*, 983 F. Supp. 2d 98 (D.D.C. 2013)............13

*Wade v. Dist. of Columbia*, 780 F. Supp. 2d 1 (D.D.C. 2011)........................................4

*Walden v. Patient-Centered Outcomes Rsch. Inst.,*
177 F. Supp. 3d 336 (D.D.C. 2016)………………………………………………………3, 6-7

*Walker v. Dist. Of Columbia*, 279 F. Supp. 3d 246 (D.D.C. 2017) .................................8

## INTRODUCTION

Plaintiff Arnold Fields' ("Plaintiff") Opposition to the United States Capitol Police Board's ("Defendant") Motion to Dismiss highlights the fatal flaws in all three of his Complaints: Plaintiff has not presented any facts from which the Court could reasonably infer that the United States Capitol Police (the "USCP" or "Department") treated him unlawfully.   Plaintiff's Opposition merely recites the same deficient allegations set forth in the Complaints, adding conclusory allegations, colorful adjectives, and innuendo to detract from the lack of any facts supporting the claims.  Plaintiff cannot meet his burden of providing sufficient factual matter to state a claim to relief that is plausible on its face based on this showing.

Accordingly, each of Plaintiff's remaining claims in Civil Action Nos. 02-CV-01346 (EGS) ("*Fields I*"), 03-CV-01505 (EGS) ("*Fields II*"), and 03-CV-02644 (EGS) ("*Bolden-Whitaker*"), must be dismissed.

## ARGUMENT

## I.   PLAINTIFF'S OPPOSITION CITES NO FACTS THAT SUPPORT ACTIONABLE HOSTILE WORK ENVIRONMENT, DISCRIMIANTION, OR RETALIATION CLAIMS IN *FIELDS I.*

Plaintiff's Opposition does not rectify the inherent deficiencies in the hostile work environment, discrimination, or retaliation claims asserted in the *Fields I* Complaint.  Defendant's Motion to Dismiss asserts that the alleged conduct underlying Plaintiff's claims cannot serve as the basis of a hostile work environment claim as they do not demonstrate the Plaintiff's workplace is "permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive'" to alter Plaintiff's working conditions.  (Def.'s Br. 6.)  The Motion to Dismiss further contends that the *Fields I* Complaint lacks any facts that support a discrimination or retaliation claim because the allegations neither demonstrate that Plaintiff suffered an objectively tangible

harm nor that Plaintiff's race or protected activity motivated the challenged conduct, both of which are necessary criteria to maintain such claims.  (*Id.* at 9-12.)

Plaintiff's Opposition alleges that Defendant "offers no argument that these acts were not discriminatory," (Opp'n 11), an allegation that is easily disproven by even a cursory perusal of the Motion to Dismiss.

Plaintiff's Opposition also fails to identify facts in the Complaint that indicate that he plausibly alleged conduct for which Defendant is liable.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2004)).

A.   Plaintiff Provides No Facts That The USCP Engaged In Abusive Conduct That Altered Plaintiff's Working Conditions.

Plaintiff fails to allege any extreme or abusive conduct by the Department that was so severe or pervasive as to affect the terms and conditions of his employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (a plaintiff must provide facts indicating that a workplace "is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment.")

Plaintiff points to nothing in the *Fields I* Complaint that indicates that the Department created an abusive working environment for Plaintiff.  Plaintiff confirms that his hostile work environment claim in *Fields I* is based entirely on the following conduct: (1) In June 2001, Sergeant Miller met with Plaintiff about an encounter Plaintiff had with a staffer.  During the meeting, Miller allegedly told Plaintiff to be more open and also told Plaintiff that he prevented an Internal Affairs investigation into the matter.  Miller also informed Plaintiff he was aware of a previous issue Plaintiff had at the House Division; (2) In August 2001, Miller requested that Plaintiff provide documentation for a week of sick leave; (3) In August 2001, Plaintiff became

aware that Miller commented in Plaintiff's performance evaluation that Plaintiff did not possess "interpersonal skills"; (4) In October and November 2001, Plaintiff was assigned to work outside perimeter security on weekends and also was assigned to come in on a scheduled day off, but he called in sick; (5) In November 2001, Miller asked Plaintiff to sign medical documentation he previously submitted; and (6) In November 2001, Sergeant Goodine issued a CP-550, personal performance note, indicating that Plaintiff had abused leave by taking unscheduled leave on his scheduled day off. (*Fields I* Compl. ¶¶7A-E, exh. 1 &2.) Viewed collectively, this list of perceived slights do not state a facially plausible claim of hostile work environment.

The *Fields I Complaint* does not contain any information that indicate that these events were extreme and abusive conduct so severe or pervasive as to alter Plaintiff's working conditions. The actions here–which solely consist of a supervisor verbally correcting a subordinate following an interaction with a staffer; commenting on a subordinate's interpersonal skills or lack thereof in a performance evaluation; confirming documentation to support a subordinate's absences; assigning the subordinate to positions he finds undesirable; and issuing written counseling notes to the subordinate–are identical to the workplace supervisory actions that courts repeatedly confirm cannot demonstrate a hostile work environment. *See, e.g.*, *Walden v. Patient-Centered Outcomes Rsch. Inst.,* 177 F. Supp. 3d 336, 345 (D.D.C. 2016) (dismissing hostile work environment claim where the plaintiff was placed on a PIP and given a negative performance evaluation because they did not evidence repeated abusive conduct towards the employee); *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (dismissing hostile work environment claim based on work-related supervisor action such as being placed on a PIP, receiving unfavorable feedback, being precluded from submitting more assignments; and placement on a POP); *Wade v. Dist. of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011) (identifying performance issues not hostile

work environment); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("Nor can the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context."); *Adams v. Dist. of Columbia*, 50 F. Supp. 3d 47, 52-53 (D.D.C. 2014), *aff'd* 618 Fed. Appx. 1 (D.C. Cir. 2015) (dismissing hostile work environment claim based on allegations that the plaintiff's boss spoke harshly on several occasions and did not make the plaintiff feel wanted as an employee).

Plaintiff's Opposition further fails to identify any details about the nature of these events that would convert them from ordinary workplace tribulations to the type of repeated abusive conduct necessary to establish a hostile work environment claim. Although alleging that the *Fields I* Complaint "describes in detail how USCP–including Sergeant Kyle Miller–targeted [Plaintiff] based on his race and altered the conditions of his employment," (Opp'n 14), Plaintiff's Opposition cites no allegations in the *Fields I* Complaint that support this. Instead, Plaintiff characterizes his supervisors' actions as "overreaction," "over-scrutiny, "baseless," "disparaging," "groundless," and "insidious," among other things. But questioning an employee about an interaction with a staffer is not inherently "insidious," even if the employee believes that there was no basis for the questioning. Indeed, none of the actions Plaintiff challenges is objectively offensive or abusive. It is merely conduct with which Plaintiff disagrees, which does not make it actionable. *See Forkkio v. Tanoue*, 131 F. Supp. 2d 36, 45 (D.D.C. 2001) (finding that "plaintiff's personal preference or unhappiness alone is utterly insufficient to establish" a discrimination or hostile work environment claim under Title VII). Not only do the actions Plaintiff challenges not rise to the level of abusive conduct necessary to maintain a claim of hostile work environment, "they are precisely the kind

of 'minor and even trivial employment actions' that are not properly the subject of Title VII discrimination suits."  *Id.*

None of the case law upon which Plaintiff relies serves to revise his deficient hostile work environment claim as they either confirm that claims based on allegations such as Plaintiff's do not establish a hostile work environment or the facts are easily distinguishable from those present here.

For example, Plaintiff improperly relies on *Singletary v. Dist. of Columbia*, 351 F.3d 519, 528 (D.C. Cir. 2003), for the proposition that "assigning an employee to unsuitable working conditions when 'other, more suitable' locations were available was actionable to evidence a hostile work environment claim," which is presumably asserted to support Plaintiff's contention that his assignment outdoors establishes a hostile work environment claim.  (Opp'n 14.)  The *Singletary* plaintiff's circumstances, however, materially differ from Plaintiff's in that the court found:

> The room to which [the] plaintiff was assigned was not previously used as an office space, but rather was used as a general storage room. The storage room was without heat or ventilation. It was poorly lit, which posed problems for [the] plaintiff, who is visually challenged. The only entrance to [the] plaintiff's office was through a clinic to which plaintiff did not have keys. The phone in the room often did not work. The office space contained ... brooms [and] boxes of debris.... Defendants clearly intended to relegate [the] plaintiff to this sub-standard office.... [T]he record shows that there were other, more suitable, places in which [the] plaintiff's office could have been located.

*Singletary*, 351 F.3d at 528.

By contrast, here Plaintiff merely alleges that he was assigned to posts on the outside security perimeter that he found undesirable.  (*Fields I* Compl. ¶ 7E.)  Unlike the Singletary plaintiff, Plaintiff has not presented any facts from which the Court could reasonably infer that the

security perimeter assignment was unusual or unsuitable for someone in Plaintiff's position such that it plausibly altered Plaintiff's working conditions.

Plaintiff improperly relies on *Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62 (D.D.C. 2019), for the premise that allegations of "targeted behavior" as opposed to "seemingly random enforcement of workplace rules" may be actionable as a hostile work environment claim.  (Opp'n 16.)   The targeted behavior that the *Thomas* plaintiff alleged, however, concerned offensive comments about his sexuality made by his supervisors two or three times a week.  *Thomas*, 412 F. Supp. 3d at 93-94.  Unlike the *Thomas* plaintiff, Plaintiff asserts no facts showing conduct by his supervisors specifically targeting his protected characteristic.

 Plaintiff's reliance on *Childs-Pierce v. Utility Workers Union of America*, 383 F. Supp. 2d 60 (D.D.C. 2005), for the premise that "requests for medical documentation can be adverse employment actions" is similarly misplaced.  The court determined that a request for medical documentation and an independent medical examination *that culminated in the plaintiff's termination* could be adverse actions or materially adverse actions for purposes of a disparate treatment discrimination and retaliation claim.  *Childs-Pierce*, 383 F. Supp. 2d at 72, 75.  Similar facts are not present in this matter, as Plaintiff has not shown any harm resulting from the requests for medical documentation directed at him.  Indeed, contrary to Plaintiff's assertion and severely undermining Plaintiff's claims, the *Childs-Pierce* court held that the plaintiff could not rely on her employer's request for medical documentation, request that she provide a birth certificate, and denial of her sick leave as a basis to support her hostile work environment claims.  *Id.* at 78-79. The court found that these events "simply are not, individually or collectively, sufficiently severe or pervasive to constitute a hostile work environment claim."  *Id.* at 79.

Likewise, Plaintiff improperly relies on *Walden*, 177 F. Supp. 3d 336, for the premise that "when PIP placement and negative performance feedback result in injuries such as losses of salary, benefits, and entitlements, these actions meet the threshold for an adverse employment action." (Opp'n 16.)  As an initial matter, as discussed in Part I.B below, no fact in the *Fields I* Complaint show that the challenged comment in Plaintiff's performance evaluation resulted in "losses of salary, benefits, and entitlements."  *Contra Walden*, 177 F. Supp. 3d at 342-43 (finding that the plaintiff met her pleading obligations for disability discrimination claims where she alleged "that the combination of the negative performance review and the PIP led to a significant increase in her responsibilities that substantially increased her workload and changed her job requirements, forcing her to leave her position and lose her salary").  *Walden* also does nothing to advance Plaintiff's hostile work environment claim given that the *Walden* court held that a negative performance review is insufficient to alter a plaintiff's working conditions and dismissed the plaintiff's hostile work environment claims.  *Id* at 344-45.  Plaintiff's reliance on this case only serves to show that his hostile work environment claim should be dismissed.

In sum, Plaintiff fails to identify any abusive conduct in the *Fields I* Complaint sufficient to maintain a hostile work environment.  This claim therefore must be dismissed.

B.    Plaintiff Provides No Facts Indicating That He Suffered Any Adverse Action Or Material Adverse Action.

Plaintiff's Opposition also fails to address Defendant's assertion that the *Fields I* Complaint has not alleged facts showing an adverse action sufficient to maintain a claim of discrimination or retaliation.

A discrimination claim is not actionable unless a plaintiff provides facts indicating that he suffered a tangible harm such as a loss of pay, benefits, or impacted future career growth.  *Redmon*

*v. United States Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015) (citing *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)).

Likewise, to maintain a retaliation claim, the Plaintiff must allege a materially adverse action that would discourage an employee from engaging in a protected activity.  *See Walker v. Dist. of Columbia,* 279 F. Supp. 3d 246, 274 (D.D.C. 2017) (dismissing a retaliation claim because the plaintiff did not demonstrate there was a tangible consequence in her circumstances so as to constitute a materially adverse action).

Plaintiff errs in conflating these standards with the standard applicable to hostile work environment claims, and, thus, spends a significant portion of his brief contending that the targeted acts *collectively* arise to an adverse action.  (Opp'n 18.)  The standards applied to discrimination and retaliation claims are distinct from those applied to a hostile work environment.  Plaintiff must show that each discrete act he challenges resulted in objective tangible harm.

Plaintiff has not made this showing.  Plaintiff's broad and unsupported allegation that each item in his Complaint "cumulatively resulted in damage to [Plaintiff's] professional and financial…prospects as well as affecting him personally," (Opp'n at 15),  is not sufficient without facts showing he suffered any damage to his career, finances, or suffered any personal impact.  *See Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 206 (D.D.C. 2012) (finding no adverse action where the plaintiff did not plead that her pay was docked or her benefits diminished in any way or that her temporary reassignment had any practical consequences).  Likewise, as to the comment in the performance evaluation, Plaintiff nakedly asserts that it resulted in lower earnings and impaired career growth, (Opp'n 16-17), which, by itself, also does not meet the threshold requirement to survive a motion to dismiss.  *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("courts need not accept inferences drawn by plaintiffs if such inferences are unsupported

by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form

of factual allegations.").

Based on his failure to identify any tangible harm he suffered based on the discrete acts he

challenges, Plaintiff's discrimination and retaliation claims must be dismissed.

C.     Plaintiff Provides No Facts Indicating That The Challenged Actions Resulted
       Because Of His Race Or Protected Activity.

As to his obligation to show a plausible link between the challenged conduct and his race

or protected activity, Plaintiff fails to meet this burden.  Plaintiff merely alleges that he has

"determined that he was being targeted for harassment and retaliation by [his supervisor]."  (Opp'n

21.)  Plaintiff offers no facts from which the Court could reasonably infer that the actions he alleges

were taken against him are causally linked to his race or alleged protected activity.  A bare assertion

of discrimination, retaliation, or harassment or a recitation of the elements of the same is not

enough.  *See Iqbal*, 556 U.S. at 678.

Indeed, as it concerns Plaintiff's retaliation claim, the causal link is non-existent given that

many of the actions alleged, including the purported negative performance evaluation, occurred

before Plaintiff's purported protected activity of being named as a Plaintiff in Civil Action No. 01-

CV-02221, which was filed October 29, 2001.

Based on his failure to plead a connection between the alleged discriminatory conduct and

his race or alleged protected activity, his claims for retaliation and discrimination must be

dismissed.  *See, e.g., King v. Pierce Assoc., Inc.*, 601 F. Supp. 2d 245, 248-49 (D.D.C. 2009)

(dismissing a Title VII complaint where former employee did not allege any facts indicating his

former employer took actions based on his race).

## II.  PLAINTIFF'S OPPOSITION CITES NO FACTS THAT SUPPORT ACTIONABLE HOSTILE WORK ENVIRONMENT, DISCRIMINATION, OR RETALIATION CLAIMS IN *FIELDS II*.

Plaintiff's Opposition also fails to identify facts in the *Fields II* Complaint from which the Court could reasonably infer that he was subjected to a hostile work environment, discrimination, or retaliation in violation of the Congressional Accountability Act ("CAA").  Plaintiff's claims in *Fields II* must be dismissed as a result of these deficiencies.

### A.  Plaintiff Provides No Facts That The USCP Engaged In Abusive Conduct That Altered Plaintiff's Working Conditions.

As with *Fields I*, Plaintiff also fails to allege any facts that the Department engaged in abusive conduct that created a hostile work environment as it concerns the *Fields II* Complaint. Plaintiff's contention that the investigation was unnecessary because it concerned "properly authorized leave usage," and that the comment in Plaintiff's 2003 performance evaluation was "manufactured," (Opp'n 21-22), are conclusions–not facts–and, thus, do nothing to advance Plaintiff's claims.  *See Kowal*, 16 F. 3d at 1276.

Attempting to rehabilitate the inherent deficiencies in Plaintiff's hostile work environment claim, Plaintiff's Opposition inexplicably asserts facts that are contradicted by the *Fields II* Complaint.  For example, Plaintiff alleges that the investigation into his proper leave usage took five months and that all but one person involved with initiation and undertaking of the investigation was white. (Opp'n 21-22.)  The *Fields II* Complaint, however, makes clear that the investigation into Plaintiff's leave usage occurred on October 24, 2002 and involved Plaintiff being asked by Sergeant Goodine (African American) about his October 12, 2002 leave usage.  (*Fields II* Compl. ¶ 11-12.)  Once Plaintiff explained that he requested leave through Officer Alyce Diggs under the FFLA and Diggs confirmed it, Goodine "stated that there was no need for further investigation." (*Id.*)

Plaintiff thereafter complained to a Deputy Chief that the investigation into his leave usage was "baseless" and that no investigation had been undertaken when a white officer was also absent on October 12, 2002.  (*Fields Compl. II* ¶ 16.)  Based on these allegations, the Deputy Chief "recommended that this issue be turned over to Internal Affairs" for investigation.  (*Id.*)  Thus the subsequent investigation was initiated based on Plaintiff's allegations of disparate treatment.  (*See id.*)

Even if the conclusions and allegations in Plaintiff's Opposition were true, investigations into alleged wrongful conduct, negative performance reviews, and counseling notes cannot establish that Plaintiff's workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of his employment and create an abusive working environment.  *See, e.g.*, *Brooks v. Grundmann*, 748 F.3d 1273, 1276-77 (D.C. Cir. 2014) (negative performance reviews and letters of counseling did not show severe or pervasive workplace hostility); *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 38 (D.D.C. 2019) (unfair criticism, being closely scrutinized; being falsely accused of misconduct; and being denied access to trainings and a sensitive data system over the course of two and a half years did not constitute a hostile work environment); *Jones v. Castro*, 168 F. Supp. 3d 169, 181 (D.D.C. 2016) (placement of employee under administrative investigation and on administrative leave did not constitute an adverse action).

Plaintiff once again uses inapposite case law to support his claims for a hostile work environment.  In support of his assertion that issuing a counseling note in connection with the investigation into his leave usage "is a materially adverse working condition," Plaintiff improperly relies on *Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 84 (D.D.C. 2016).  (Opp'n 22.) Kruger does not support this proposition, however, as the *Kruger* plaintiff alleged that his

supervisor openly showed hostility towards him in front of other employees by, among other things, referring to him as a "Nazi," and making offensive remarks based on his German last name. *Kruger*, 174 F. Supp. 3d at 83-84.  Unlike the *Kruger* plaintiff, Plaintiff does not allege any objectively offensive conduct; Plaintiff alleges that he was subject to an investigation and was given a performance evaluation with which he disagreed that ultimately resulted in no disciplinary action against him.  (Opp'n 22.)

Attempting to add further support for his hostile work environment claims, Plaintiff alleges that Defendant failed to address allegations, such as that "other Caucasian colleagues would not interact with him (*e.g.*, refusing to take keys from his hand and forced him to put them down first)," the USCP changed Plaintiff's "scheduled breaks to frustrating times without any notice or consultation (like scheduling two one-hour breaks on a twelve-hour shift nearly back-to-back within a three-hour span), and Plaintiff had to endure a "baseless complaint," including a charge of "[c]onduct [u]nbecoming" when he questioned the change in his breaks.  (Opp'n 22-23.)  These allegations differ materially from the allegations appearing in the *Fields II* Complaint.

Specifically, nowhere in the *Fields II* Complaint is it alleged that white officers would not interact with or take keys from Plaintiff.  To the contrary, the *Fields II* Complaint indicates that on two occasions, Officer Elizabeth Langley "withheld Plaintiff's keys" instead of "placing them on the desktop, per custom, for Plaintiff to retrieve."  (*Fields II* Compl. ¶ 22.)

The *Fields II* Complaint also indicates that the changes in his break occurred only twice: once on October 25, 2004, when Langley scheduled Plaintiff's break for 12:00 p.m. instead of 1:00 p.m., which he had been accustomed to, (*Fields II* Compl. ¶ 23); and the second time on October 26, 2004, when Langley scheduled Plaintiff's second break for 3:00 p.m. instead of 5:00 p.m., which is when he typically took his second break.  (*Fields II* Compl. ¶¶ 25-26.)  That Langley, a

non-management employee, allegedly failed to leave the keys Plaintiff needed on the desktop on two occasions and modified Plaintiff's break start time by one or two hours on two occasions is not objectively extreme conduct that is so severe or pervasive as to alter the conditions of Plaintiff's employment, whether considered independently or with the other conduct Plaintiff challenges in the *Fields II* Complaint. *See Baird v. Gotbaum*, 888 F. Supp. 2d 63, 76 (D.D.C. 2012) ("[A]llegations consist[ing] of a series of 'petty slights,' ordinary workplace tribulations… do not establish a hostile work environment claim."); *Turner v. United States Capitol Police Bd.*, 983 F. Supp. 2d 98, 109 (D.D.C. 2013) ("[n]ot everything that makes an employee unhappy would necessarily be part of a hostile work environment claim".).[1]

Nor is it appropriate to collectively consider this conduct with the alleged October 2002 investigation into Plaintiff's leave usage, the November 2002 investigation into Plaintiff's allegations of disparate treatment, or the January 2003 performance evaluation that Plaintiff challenges, as these incidents occurred nearly two years before the conduct allegedly engaged in by Langley, were not committed by Langley, and otherwise bear no indication that they are a part of the same unlawful hostile work environment claim.

---

[1] Plaintiff relies on the dissenting opinion in *Ortiz-Diaz v. U.S. Dep't of Hous. & Urban Dev.*, 831 F.3d 488, 496 (D.C. Cir. 2016) *vacated by* 697 Fed. App'x 6 (D.C. Cir. 2017) as authority for the proposition that "transfer of police officers to a more difficult and inconvenient work schedule could be an adverse action, even without a change in the officers' responsibilities or pay." As an initial matter, Plaintiff may not rely on a vacated opinion as precedent.

Moreover, the vacated opinion cites *Ginger v. Dist. of Columbia*, 527 F.3d 1340, 1344 (D.C. Cir. 2008), for the premise that a schedule change could be an adverse action. In *Ginger*, the plaintiffs sufficiently alleged that they suffered an adverse action when the schedule change led to a loss in pay and severely affected their sleep schedules and made it more difficult for them to work overtime and part-time day jobs. *Ginger*, 527 F.3d at 1344. Beyond alleging that the change in his break schedule was frustrating, Plaintiff provides no facts indicating that the change resulted in objectively tangible harm. Nor can he, given that he merely alleges that he took his break one hour earlier on one day, and two hours earlier on the second day.

The allegations concerning a USCP investigation into Langley's harassment complaint against Plaintiff, which Plaintiff indicates was completed in six weeks and concluded that the allegations were unfounded, (*Fields II* Compl. ¶ ¶ 32-33), also do not save Plaintiff's hostile work environment claim.  Plaintiff has not alleged any conduct that could plausibly be perceived as abusive and severe or pervasive.  The allegations indicate that the Department received a complaint against Plaintiff from Langley, it investigated the complaint, and it determined the complaint was unfounded.  Plaintiff cannot show that he was the victim of extreme conduct or that such conduct altered the terms of his employment based on these facts.

B.      Plaintiff Provides No Facts Indicating That He Suffered Any Adverse Action Or Material Adverse Action.

Plaintiff again conflates the standards for discrimination and retaliation, which each require Plaintiff show that he suffered an adverse action, with the standard for hostile work environment. It is irrefutable that the conduct challenged here, namely investigations that resulted in no finding of wrongful conduct or discipline and a performance evaluation for which Plaintiff identifies no adverse effects does not establish an objective tangible harm sufficient to show that Plaintiff suffered an adverse or materially adverse action.  *See, e.g.*, *Brown v. Mills*, 674 F. Supp. 2d 182, 191-92 (D.D.C. 2009) (an investigation into employee conduct not enough to demonstrate adversity for discrimination or retaliation); *see also Jones,* 168 F. Supp. 3d at 180 (the mere initiation of an investigation is not enough to constitute a materially adverse action); *Clark v. Johnson*, 206 F. Supp. 3d 645, 660-61 (D.D.C. 2016) (initiation of an investigation alone without other action not enough to maintain a retaliation claim); *Herbert v. Architect of the Capitol*, 839 F. Supp. 2d 284, 302-303 (D.D.C. 2012) (counseling letter that stated plaintiff's behavior was "inappropriate" and "unprofessional" was not abusive such that it constituted a materially adverse action).  These arguments go unaddressed in Plaintiff's Opposition.

14

Plaintiff's remaining allegations also do not indicate that Plaintiff was subject to a an adverse or materially adverse action when he had to retrieve keys from Langley directly rather than from the desk at which they are usually kept or from having to take his break one to two hours earlier than he usually did.

Plaintiff cannot maintain a claim for discrimination or retaliation without showing he suffered an adverse action. His claims must therefore be dismissed.

C.      Plaintiff Provides No Facts Showing A Plausible Connection Between His Race Or Alleged Protected Activity And The Conduct He Challenges.

As to the 2003 performance evaluation, and the alleged conduct of Langley, Plaintiff identifies no link between this challenged conduct and either his race or protected activity. While Plaintiff continues to allege that he is African-American and engaged in CAA protected activity, he does not link either of these statuses to any of his allegations by pleading facts that allow a factfinder to make the inference that the alleged discriminatory conduct occurred because of his protected characteristics. *Slate v. Pub. Def. Svc. for the Dist. of Columbia*, 31 F. Supp. 3d 277, 309 (D.D.C. 2014) (plaintiff's allegations not sufficiently related to his alleged protected activity).[2]

## III.  PLAINTIFF'S OPPOSITION CITES NO FACTS THAT SUPPORT ACTIONABLE HOSTILE WORK ENVIRONMENT, DISCRIMINATION, RETALIATION CLAIMS IN *BOLDEN-WHITAKER*.

Plaintiff's discrimination, retaliation, or hostile work environment claim based on an investigation in the *Bolden-Whitaker* Complaint fail for the same reason that similar allegations involving investigations failed in *Fields II*: Plaintiff has not provided any facts indicating he was

---

[2] As to the investigation into his use of leave, Defendant concedes that Plaintiff's allegations plausibly demonstrate a link between protected activity and class as Plaintiff alleges that two white officers, Officer Glyniss Senn and Officer Frank Jones, who are not proposed class agents, used leave on the same date for which he was being investigated for using leave and were not investigated. Still, the hostile work environment, discrimination, and retaliation claims based on these facts fail as Plaintiff otherwise has not established a facially plausible cause of action.

subject to discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive as to alter his working conditions and create a hostile work environment; Plaintiff has not provided any facts showing that he suffered an objectively tangible harm; Plaintiff has not provided any facts showing the challenged conduct was due to his race or purported protected activity.  (*See infra* Part I and Part II.)

As relevant here, Plaintiff alleges that the USCP initiated an investigation into Plaintiff's alleged failure to respond to an alarm and refusal to provide a written statement when questioned about it.  (*Bolden-Whitaker* Compl. ¶ 18.)  As the *Bolden-Whitaker* Complaint is silent as to any discipline or other adverse consequence resulting from this investigation, Plaintiff has not shown that he suffered an adverse or materially adverse action.  Thus, Plaintiff cannot maintain an actionable discrimination or retaliation claim based on these facts.

Plaintiff also has not provided any facts indicating that he was subject to a hostile work environment.  Plaintiff, however, insists that the Court consider this investigation collectively with the claims he raises in *Fields I* and *Fields II*, but he provides no legal analysis or factual basis for doing so.  For example, no facts indicate that Plaintiff's 2002 performance evaluation is part of the same hostile work environment as the 2005 investigation into Plaintiff's failure to respond to an alarm.  Rather, the facts indicate that the incidents occurred several years apart; involved multiple actors, including Plaintiff's direct supervisors, management officials with no supervisory authority over Plaintiff, and coworkers; and involved a range of activities, including supervisory actions, such as the issuance of counseling notes and performance evaluations, administrative investigations, and minor coworker workplace disputes.  In short, Plaintiff provides no facts that crystallize how these various disparate acts coalesce into the same hostile work environment.

Plaintiff also fails to provide any facts linking the 2005 investigation to his race or protected activity.  Plaintiff's Opposition merely asserts that the Department "did not treat other, similarly situated Caucasian officers this way."  This statement, however is a legal conclusion, not a factual allegation.  Plaintiff provides no facts suggesting that Plaintiff's treatment was unfavorable in comparison to that of any white officer.  Naked assertions of discrimination without more are not enough to survive a motion to dismiss.  *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 284 (D.D.C. 2017) ("[B]ald assertion that Defendants did not address [Plaintiff's] concerns because of his age 'neither makes the accusation true nor makes it reasonable for him to have believed it was true.'").  The number of times Plaintiff alleges he engaged in protected activity is not relevant where Plaintiff does not connect his protected activity to the alleged discriminatory conduct.  *Slate,* 31 F. Supp. 3d. at 309.  His claims in *Bolden-Whitaker* must be dismissed.

## CONCLUSION

Plaintiff's remaining claims must be dismissed because they fail to state claims for hostile work environment, discrimination and retaliation.  Plaintiff fails to plead any facts showing a connection between alleged discriminatory or retaliatory conduct and his alleged protected classes.  Plaintiff fails to show any adverse or materially adverse action to support a claim for discrimination or retaliation.  Plaintiff also fails to show how the petty slights he alleges indicate that the Department engaged in offensive or hostile conduct so severe or pervasive as to alter Plaintiff's working conditions.  Plaintiff has failed to assert any claims that are plausible on their face.  For the foregoing reasons, and those stated in Defendant's Motion to Dismiss, Defendant requests that the Court dismiss each of Plaintiff's Complaints.

Date: February 21, 2022                    Respectfully submitted,

                                           Matthew M. Graves, D.C. Bar #481052
                                           United States Attorney

17

Brian P. Hudak
Acting Chief, Civil Division

By: /s/ *Thomas W. Duffey*

Thomas W. Duffey
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 252-2510
Thomas.duffey@usdoj.gov

Kelly M. Scindian #985787
Britney D. Berry
April M. Rancier
Aaron M. Wilensky
Office of General Counsel
Employment Law Division
United States Capitol Police
119 D Street NE
Washington, DC 20510
Telephone: (202) 593-3619
Facsimile: (202) 593-4477
Kelly.Scindian@uscp.gov
Britney.Berry@uscp.gov
April.Rancier@uscp.gov
Aaron.Wilensky@uscp.gov

*Counsel for the United States Capitol Police Board*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia, using the Court's CM/ECF system.  The CM/ECF system sent a "Notice of Electronic Filing" to pro se Plaintiffs Sharon Blackmon-Malloy and Frank Adams, and to Algernon Marques Pitre, counsel for Plaintiffs Arnold Fields, Dale Veal, Regina Ikard, and Reginald Waters.  The foregoing motion was served, via first-class mail, postage prepaid, on February 22, 2022, on the following Plaintiffs who have entered appearances pro se in this action:

Regina Bolden-Whitaker
5812 Jackies Way
Clinton, MD 20735

Ave Marie Harris
5404 Stratford Lane
Temple Hills, MD 20748

Luther S. Peterson, Jr.
1359 E Street, SE
Washington, DC 20003

Danny L. McElroy
7102 Meadow Rue Terrace
Upper Marlboro, MD 20772

Leonard Ross
9379 Principal Lane
Waldorf, MD 20603

Frank W. Wilkes, Jr.
8907 Hardesty Drive
Clinton, MD 20735

Tyronne Brooks
10310 Arethusa Lane
Upper Marlboro, MD 20772

Richard Webb
10752 Green Mountain Cir.
Columbia Md 21044

Tammie D. Green
30 Regency Drive
Stafford, VA 22554

Governor Latson
1116 Silver Oaks Court
Raleigh, NC 27614

Sandra Brown-James
|3815 Butler Springs Drive
Loganville, GA 30052

Kevin Matthews, Sr.
2507 32nd Street SE
Washington, DC 20020

Brent Mills
1087 Sugar Maple Terrace
Upper Marlboro, MD 20774

Kendrick Young
10114 Georgian Lane
Upper Marlboro, MD 20772

Gary Goines
438 Balboa Blvd.
Clermont, FL 34715

Duval Phelps
8920 Continental Place
Landover, MD 20785

/s/ *Thomas W. Duffey*

20