**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHARON BLACKMON-MALLOY, et al. | |
| Plaintiff, | |
| v. | Case No. 01-2221 (EGS) |
| UNITED STATES CAPITOL POLICE BOARD, | Hon. Emmet G. Sullivan |
| Defendant. | |

**PLAINTIFF LUTHER S. PETERSON, JR'S.,**
**OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF**
**PETERSON'S CLAIMS**

In accordance with Rule 12 (b)(6) of the Federal Rules of Civil Procedure and Rule 7 of

the United States District Court for the District of Columbia Local Rules, Plaintiff Luther S.

Peterson, Jr., by and through his own violation do hereby requests this Honorable Court to deny

Defendant's Partial Motion to Dismiss Plaintiff's claims as stated in the Fourth Amended

Complaint filed in Civil Action No. 01: 2221. Plaintiff Peterson has stated plausible claims and

submitted more than enough detailed factual evidence in support upon which relief can be

granted, if taken as true. See Defendant's Partial Motion to Dismiss (ECF) 519-1 at footnote 1, p.

2. "Defendant is not seeking dismissal of Plaintiff's discrimination claim in the Fourth Amended

Complaint in Blackmon-Malloy at paragraph 61 concerning the Defendants allegedly issue

Plaintiff a CP-535 that resulted in a loss of 64 hours of leave."

RECEIVED

MAY 10 2023

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Respectfully submitted,

LUTHER S. PETERSON, JR.
1359 E Street S.E.
Washington, DC 20003

May __10 th__ 2023

## CERTIFICATE OF SERVICE

I, Pro Se Plaintiff Luther S. Peterson, Jr., do hereby certify that on May ___10___, 2023,

the foregoing Memorandum in Opposition to Defendants Partial Motion to Dismiss

Plaintiff Luther S. Peterson, Jr's., claims, and proposed ORDER was electronically served on

the following:

Thomas W. Duffey
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, D.C. 20530
Thomas.Duffey@usdoj.gov

A. Marques Pitre
1300 Pennsylvania Avenue NW, Suite 700
Washington, DC. 20004
Ampitre@ampitreassociates.com

Additionally, the below listed unrepresented plaintiffs identified in this civil action will

be served via U.S. postal first-class mail.

FRANK ADAMS
5817 South Marwood Blvd.
Upper Marlboro, MD. 20772

AVE MARIE HARRIS
5404 Stratford Lane
Temple Hills, MD 20748

DANNY L. MCELROY
7102 Meadow Rue Terrace
Upper Marlboro, MD 20772

FRANK W. WILKES
8907 Hardesty Drive
Clinton, MD 20735

GOVERNOR LATSON, JR,
1116 Silver Oaks Court
Raleigh, NC 27614

KENDRICK A. YOUNG
10114 Georgian Lane
Upper Marlboro, MD 20772

LEONARD ROSS
9379 Principal Lane
Waldorf, MD 20603

REGINA BOLDEN-WHITAKER
5812 Jackies Way
Clinton, MD 20735

RICHARD WEBB
10752 Green Mountain Circle
Columbia, MD 21044

SANDRA BROWN-JAMES
3815 Butler Springs Drive
Loganville, GA 30052

TAMMIE D. GREEN
30 Regency Drive
Stafford, VA 22554

TYRONE BROOKS
1310 Arethusa Lane
Upper Marlboro, MD 20772-4367

DUVALL PHELPS
8920 Continental Place
Landover, MD 20785

KEVIN MATTHEWS, SR.
2507 32nd Street, S.E.
Washington, DC 20020

BRENT MILLS
10807 Sugar Maple Terrace
Upper Marlboro, MD 20774

SHARON BLACKMON-MALLOY
2525 36th Street S.E.
Washington, DC 20020

Respectfully submitted,

LUTHER S. PETERSON, JR.
1359 E Street S.E.
Washington, DC 20003

May ___10___, 2023

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHARON BLACKMON-MALLOY, et al.

    Plaintiff,

       v.

UNITED STATES CAPITOL POLICE BOARD,

    Defendant.

Case No. 01-2221 (EGS)

Hon. Emmet G. Sullivan

**PLAINTIFF LUTHER S. PETERSON, JR'S., MEMORANDUM OF POINTS AND AUTHORTIES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF PETERSON'S CLAIMS**

TABLE OF CONTENTS

TABLE OF AUTHORTIES ………………………………………………3

I.   INTRODUCTION …………………………………………….4

II.   BACKGROUND ……………………………………………..4

III.   STANDARD OF REVIEW ………………………………………7

IV.   ARGUMENT ………………………………………………9

V.   CONCLUSION ……………………………………………16

CERTIFICATE OF SERVICE ………………………………………17

PROPOSED ORDER ……………………………………………Submitted

# TABLE OF AUTHORTIES

Cases

Ashcroft v. Iqbal, 556, U.S. 662, 678 (2009) ……………………………………………7, 8

Atherton v. D.C. Office of the Mayor, 567 F .3d 672, 681 (D.C. Cir., 2009) ………8

Baloch v. Kempthorne, 550 F.3d, 1191, 1201 (D.C. Cir., 2008) ………………….9

Banneker Ventures, LLC V. Graham, 798 F.3d 119 (D.C. Cir., 2015) ……………8, 12

Barr v. Clinton, 370 F. 3d 1196 (D.C. Cir., 2004) …………………………………9, 13

Bell Atlantic Corp., v. Twombly, 550 U.S. 544 (2007) ………………………………7, 8

Bing v. Architect Capitol, 300 F. Supp .3d 53 (D.D.C. 2017) ……………………….9

Cones v. Shalala, 199 F .3d 512 (D.C.Cir.,2000) ……………………………………9, 12

Fennell v. AARP, 770 F Supp .2d 118, 127 (D.D.C. 2011) ………………………….9

Haines v. Kerner, 404 U.S. 519, 520 (1972)). ……………………………………………7

Harris v Forklift Sys., Inc., 510 U.S. (1993) ………………………………………….15

Higgs v. Cava Grp., Inc., 239 F. Supp .3d 257 (D.D.C. 2017) ……………………….8

Johnson v. District of Columbia, 49 F. Supp .3d 115 (D.D.C. 2014) …………………9

Kowal v. MCI Commc'ns, Corp., 16 F .3d 127 (D.C. Cir., 1994) …………………….8

Kruger v. Cogent Commc'ns, Inc., 174 F Supp .3d 75, 83 (D.D.C. 2016) …………9

Matrix Initiatives, Inc., et al v. Siacusano et al., 563 U.S. 27 (2011) …………….9, 13

Meritor Sav. Bank v. Vinson, 477 U.S. 57 (1986) …………………………………….15

Nat'l R.R. Passenger Corp., v. Morgan, 536 U.S. 101 (2002) ……………………….12

William v. District of Columbia, 317 F. Supp .3d 195 (D.D.C. 2018) ……………8, 9

Statutes

Congressional Accountability Act, 2 U.S.C. § 1311……………………………………4, 14

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e …………………………4, 7

Rules

Rule 12(b)(6)……………………………………………………………………………….4

## INTRODUCTION

In accordance with Rule 12 (b)(6) of the Federal Rules of Civil Procedure and Rule 7 of the United States District Court for the District of Columbia Local Rules, Plaintiff Luther S. Peterson, Jr., by and through his own violation do hereby requests this Honorable Court to deny Defendant's Partial Motion to Dismiss Plaintiff's claims as stated in the Fourth Amended Complaint filed in Civil Action No. 01: 2221.

Plaintiff Peterson career begin with the United States Capitol Police department ("USCP" or "Defendant") on October 10, 1978. The Defendant is aware that Plaintiff is African American and a member of a protected class.  Plaintiff was subjected to unfair discipline, hostile work environment, and retaliation for engaging in protected activity based on his race when the Defendant failed to create a safe work environment free from fear, insult, and intimidation.

The USCP unlawfully retaliated, executed unfair disciple, and forced Plaintiff to perform his duties in a hostile work environment. Plaintiff Peterson have engaged in activity protected by the Congressional Accountability in violation of the Congressional Accountability Act, 2 U.S.C. § 1311, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., which it applies. Plaintiff Peterson has met his burden of providing sufficient facts for this Honorable Court to grant relief.

## BACKGROUND

Plaintiff Peterson presents this Court with enough facts to state facially plausible claims in this opposition motion to Defendants partial motion to dismiss. Plaintiffs' Fourth Amended

4

[1]("Complaint." ECF No. 278) describes a department littered with illegal acts of racial

discrimination in areas of unfair discipline, hostile environment, retaliation, and a lack of career

advancement opportunities for black officers.

Plaintiff Peterson was discriminated against on the basis of his race when he was

unfairly disciplined.  Plaintiff Peterson received a CP-535 Request for Disciplinary Action on

January 25, 2001, charged with "Violation of Operational Directive PRF: 1.3 (Rules of

Conduct), Rule B14: Use of Weapons, specifically, in a manner contrary to General Order

4300.2.c."

Plaintiff Peterson was home alone on September 5, 2000 (his wife and children were out

of town) when his burglar alarm sounded, and he witnessed someone in his doorway, Plaintiff

feared for his life and believed that he would be harmed in a manner that could result in his death

or bodily injury.  Plaintiff fired his service revolver at the intruder.

The Maryland police were called, and no charges were filed against Plaintiff Peterson. In

October 2000, Officer Peterson received notice of an Internal Affairs investigation concerning

this incident and in November 2000 Plaintiff Peterson received notice that the investigation was

concluded. Plaintiff Peterson, along with his union representative, met with white Inspector

Jarboe who informed him that he was being disciplined for not having his weapon fully loaded,

although the department does not require that a weapon be fully loaded.

On 11/28/2000, Plaintiff Peterson received a CP-534 Command Discipline Report

charged with "Violation of Operational Directive PRF 1.3, Rules of Conduct," and Category A.

Duty to Obey, Rule A3, "Compliance with Directives." The USCP forfeiture -8 hours of leave

---

[1] Plaintiffs Fourth Amended "Complaint" ECF-278 at 60 "…Officer Peterson grieved the discipline…" the correct
statement should reflect "Officer Peterson grieved the CP-534 Command Discipline Report."

from Plaintiff Peterson.  Nonetheless, Plaintiff Peterson grieved this excessive and unjust discipline on 11/28/2000, and it was subsequently withdrawn on 12/20/2000.

On January 25, 2001, Defendant's Associate General Counsel Kenneth Benjamin called Plaintiff Peterson into a meeting about the shooting that occurred in his home. Plaintiff Peterson was informed he could either accept the CP-535-B Findings and Recommendations and be docked 64 hours or he could contest the charges and the penalty.

Plaintiff Peterson chose to contest the charges. On April 3, 2001, the day before Plaintiff Peterson's (DRB) hearing, Plaintiff Peterson was called in to see white Sergeant Stillman, who informed plaintiff that he was receiving a CP-550 Personnel Performance Note for not responding to calls from Inspector Thompson about his case. Plaintiff Peterson explained to Sergeant Stillman that an official union representative would be required to provide representation on his behalf especially after receiving a phone call from Inspector Thompson threaten to cut off plaintiff's witness list for the upcoming Disciplinary Review Board (DRB) hearing.

On April 5, 2001, Plaintiff Peterson was presented with two separate CP-550's dated April 3, 2001. Plaintiff Peterson believed these CP-550's Personnel Performance Notes were in retaliation for his successful appeal of the CP-534 and his ongoing opposition to the Defendant's illegal discriminatory acts.

Approximately seven months after the off-duty shooting incident, Plaintiff received the CP-535-B from then Chief James Varey dated August 3, 2001, for discharging his weapon and was docked 64 hours. See Defendant's Partial Motion to Dismiss (ECF 519-1) at footnote 1, p. 2. "Defendant is not seeking dismissal of Plaintiff's discrimination claim in the Fourth Amended Complaint in Blackmon-Malloy at paragraph 61 concerning the Defendants allegedly issue

Plaintiff a CP-535 that resulted in a loss of 64 hours of leave."   Defendant conceded to this claim and chose to disregard the seriousness of Plaintiff Peterson's facts presented herein.

Plaintiff Peterson offers this Court examples of alleged undisputed criminal acts committed by white officers in contrast to the excessive and unwarranted discipline he received; white Officer Edward Bailor shot at an individual without provocation, and no disciplinary action was taken against Officer Bailor by the department.   Another white Officer Gerald Pfister alleged called in a bomb threat and was allowed to maintain his employment with the USCP as opposed to being terminated. Both of these white officers never participated in protected activity.

### Standard of Review

Plaintiff Peterson reply to the Defendant's Partial Motion to Dismiss Rule (b)(6), should be held to less stringent standards. "If the complainant is pro se, the factual allegations contained in their complaint should be held to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner; 404 U.S. 519, 520 (1972)).

A complaint prevails against a Rule 12(b)(6) motion if it "contains[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they plead sufficient facts to state a claim facially plausible claim for relief and thus should be afforded an opportunity to offer evidence in support of their claims Id.; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Plaintiff Peterson's opposition to the USCP discriminatory practices violated Title VII which "prohibits federal agencies from discriminating against their employees based on race, color, religion, sex, and national origin. see 42 U.S.C. § 2000e. This title also makes it

unlawful to retaliate against an employee because [s]he has opposed any practice made an unlawful employment practice."

Plaintiff Peterson complaint presents "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Higgs v. Cava Grp., Inc., 239 F.Supp.3d 257, 260 (D.D.C. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted)).

Plaintiff Peterson evidence and records submitted to this Court is "enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). However, this burden is not a heavy one; "a short and plain statement of the claim showing that the pleader is entitled to relief" is all that is required. Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts" to warrant a legal remedy. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Plaintiff Peterson relies on his factual allegations submitted herein and this Court "must accept as true all of the factual allegations contained in the complaint." Williams v. Dist. of Columbia, 317 F.Supp.3d 195, 199 (D.D.C. 2018) (quoting Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotations omitted)); see also Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

Plaintiff Peterson expects this Court to provide him the "benefit of all inferences that can be derived from the facts alleged." Williams, 317 F.Supp.3d at 199 (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (internal quotations omitted)).

8

Upon a thorough review a motion to dismiss, a court should "construe the complaint liberally." Bing v. Architect Capitol, 300 F.Supp.3d 53 (D.D.C. 2017) (quoting Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotations omitted)).

Several "[C]ourts in this Circuit have consistently recognized the 'ease with which a plaintiff claiming employment discrimination can survive ... a motion to dismiss.'" Williams, 317 F.Supp.3d at 199 (quoting Fennell v. AARP, 770 F.Supp.2d 118, 127 (D.D.C. 2011)). "Determining the plausibility of a claim for relief is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Johnson v. Dist. of Columbia, 49 F.Supp.3d 115, 118 (D.D.C. 2014) (quoting Iqbal, 556 U.S. at 679).

Plaintiff Peterson complaint itself is not required to prove the allegation at this stage, but rather "raise a reasonable expectation that discovery could lead to evidence of liability." Matrix Initiatives, Inc., et al. v. Siacusano et al., 563 U.S. 27 (2011).

When reviewing hostile work environment claims, courts direct their attention "to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Kruger v. Cogent Commc'ns, Inc., 174 F.Supp.3d 75, 83 (D.D.C. 2016) (quoting Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C.Cir.2008) (internal quotations and citation omitted)). Engaging in protected activity is not limited to ("Adverse employment actions are not confined to hiring's, firings, promotions or other discrete incidents") (citing Cones v. Shalala, 199, F.3d 512, 521, (D.C. Cir. 2000)).

**Plaintiff Peterson's Arguments to Defendant's Partial Motion to Dismiss**

1. **The Defendant argue that Plaintiff provides no facts indicating that he suffered as adverse action when the Department issued and rescinded discipline.**

**Plaintiff Response**: Plaintiff Peterson deny this allegation from the Defendant that he presents no facts indicating he suffered and adverse action when the Department issued and rescinded discipline.   Plaintiff Peterson suffered adverse action as a result of the Defendants unlawful conduct by intentionally disregarding his participation in protected activity in a workplace permeated by racial discrimination.

Plaintiff Peterson protected activity was well known throughout the Department prior to his reported off duty shooting incident at his residence on September 5, 2000. Plaintiff Peterson protected activity date back to the early 1990's during the inception of the United States Capitol Black Police Association (USCBPA). The USCBPA stood in opposition to racial discrimination and disparate treatment in violation of Title VII.

Plaintiff Peterson terms and condition of his employment were materially altered due to being the recipient of unfair discipline, forced to work in a hostile work environment and retaliated for opposing illegal acts of discrimination and engaging in protected activity. Specifically, the Defendant manufactured and administered unwarranted excessive discipline to Plaintiff Peterson contrary to the Defendants' assertion that the CP-534 Command Discipline Report forfeiture of -8 hours of leave was never served.  Plaintiff Peterson successfully appealed the penalty and the CP-534 was withdrawn.

Plaintiff Peterson suffered severely form the stress, humiliation, lack of care received from the Defendant after experiencing a traumatic event.  See CP-534 dated 11/28/2000, Exhibit I hereto. The adverse action that Plaintiff Peterson suffered at the hands of the Defendant included the following: forced to suffer in silence, became withdrawn, lacked support from his supervisors concerning his well being and mental health. Plaintiff Peterson did not receive any time off to heal from experiencing psychological anxiety and emotional pain, due to his

10

involvement in the use of a service weapon off duty incident. Plaintiff Peterson feared daily that additional disciplinary action would be administered to him during his tour of duty this adversely affected and severely altered Plaintiff Peterson's work environment.

These stressful conditions coupled with the fear of being terminated for protecting his personal life, pale in contrast to other similarly situated non-white officers not engaging in protected activities. White officers could and did perform their duties in a stress-free work environment without the lingering thoughts of being unfairly discipline, loss of leave, loss of career opportunities and the possibility of being terminated weighed heavily on Plaintiff Peterson's mental well-being.

**2.    The Defendant argue Plaintiff provides no facts indicating that he suffered an adverse action when the Department official issued a Counseling note**

**Plaintiff Response:**  Plaintiff Deny the Defendant's assertion that "Plaintiff provides no facts indicating that he suffered as adverse action when the department issued a Counseling note."

Plaintiff Peterson suffered ongoing adverse action based on his well-known protected activity opposing unlawful conduct within the USCP department. The Defendant attempted to mislead the court by omitting key facts surrounding the presentation of two CP-550's Performance Personnel Notes.  On April 3, 2001, the day before Plaintiff Peterson's (DRB) hearing, Plaintiff Peterson was called in to see white Sergeant Stillman, who informed plaintiff that he was receiving a CP-550 Personnel Performance Note for not responding to calls from Inspector Thompson about his case. Plaintiff Peterson explained to Sergeant Stillman that an official union representative would be required to provide representation on his behalf especially, after receiving a phone call from Inspector Thompson threaten to cut off plaintiff's witness list for the upcoming Disciplinary Review Board (DRB) hearing.

On April 5, 2001, Plaintiff Peterson was presented with two separate CP-550's dated April 3, 2001. Plaintiff Peterson believed the CP-550's Personnel Performance Notes were in retaliation for his successful appeal of the CP-534 and his ongoing opposition to the Defendant's illegal discriminatory acts. The Defendant materially altered the condition of plaintiff Peterson's employment by creating an environment which encouraged and foster a hostile work force.

The entire totality of circumstances must be evaluated when reviewing Plaintiff Peterson's partial motion to dismiss. ("Adverse employment actions are not confined to hiring's, firings, promoting or other discrete incidents") (citing Cones v. Shalala, 199, F.3d 512, 521, (D.C. Cir. 2000)).

CP-550 notations in plaintiff personnel file and other black officers were common practice and widespread. The defendant failed to protect plaintiff from an environment filled with unacceptable deep rooted racial discrimination actions.

Plaintiff Peterson contends that similar behavior for white officers was and still is largely ignored by the Defendant. Plaintiffs' Fourth Amended ("Complaint." ECF No. 278) describes a department littered with illegal acts of racial discrimination in areas of unfair discipline, hostile environment, retaliation, and a lack of career advancement opportunities for black officers.

The totality of circumstances surrounding the events and Title VII violations must be addressed in this instant complaint. A court shall consider evidence and allegations with respect to untimely acts of discrimination or retaliation may well be considered "as background evidence in support of a timely claim" about another alleged occurrence. Morgan, 536 U.S. at 113, 122 S. Ct. 2061. Courts must accept "the allegations of the complainant as true," Banneker Ventures,

LLC V. Graham, 798 F., 3d. 1119, 1129 (D.C. Cir. 2015), and construe the complaint liberally,

granting the plaintiff the benefit of all inferences that can be derived from the facts alleged." Barr

v. Clinton 370 F.3d 1196, 1199 (D.C. Cir. 2004).

### 3. Defendant argue Plaintiff provides no facts from which a court could reasonably infer plaintiff was discipline more harshly than others.

**Plaintiff Response**: Plaintiff deny defendant's allegation that plaintiff "provides no facts from

which a court could reasonably infer plaintiff was discipline more harshly than others. The

Defendant unfairly discipline, retaliated, and subjected Plaintiff to a Hostile Work Environment.

Plaintiff Peterson did not work under the same conditions as similarly situated non-black officers

and for officers who had not engaged in protected activity.

Plaintiff Peterson suffered multiple injuries, including but not limited to undue physical

stress, emotional stress, anxiety, humiliation, post shooting trauma syndrome, loss of enjoyment

of life, loss of time, isolated self from peers, and worked in fear of receiving future discipline. It

is important to present to this court that Plaintiff Peterson complaint itself is not required to

prove the allegation at this stage, but rather "raise a reasonable expectation that discovery could

lead to evidence of liability."  Matrix Initiatives, Inc., et al. v. Siacusano et al., 563 U.S. 27

(2011).

**Defendants argue** Plaintiff "fails to identify any specific person (s) he alleges received

discipline that was less harsh or the discipline the person received.

**Plaintiff Response**: Plaintiff Peterson deny Defendant allegations that Plaintiff "fails to identify

any specific person (s) he alleges received discipline that was less harsh or the discipline the

person received. "Defendant presents an inaccurate and misleading statement to this court. See

Plaintiffs Fourth Amended ("Complaint") ECF -278 at 62. Plaintiff Peterson highlights another

example of illegal and unacceptable conduct allowed and tolerated by the Defendant. USCP

Officer Gerald Scott Pfister (white) allegedly called in a bomb threat and the USCP allowed Officer Pfister to continue his employment.  This incident was well known throughout the Department.

The USCP unlawfully retaliated against Plaintiff Peterson because he engaged in activity protected by the Congressional Accountability in violation of the Congressional Accountability Act, 2 U.S.C. § 1311, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., which it applies. Plaintiff Peterson publicly participated with the United States Capitol Black Police Association (USCBPA). The USCBPA stood in opposition to illegal employment practices committed by many USCP white supervisors. See Plaintiffs Fourth Amended ('Complaint") ECF -278 at 23-24. "During the 180 days before the Black Officers filed their requests for counseling with the Office of Compliance, white Officers repeatedly subjected multiple Black Officers to racist epithets, including "nigger" and variations such as "Huk"or "gangster." These racial slurs were used even when other Black Officers were present, and word of the fact that white Officers could use racist language toward Black Officers with impunity spread throughout the ranks.  One of the most dramatic instances was General Counsel John Caulfield's use of the word "nigger" toward a Virginia cab driver when Caulfield was detained in early February 2000. The slur from Caulfield, who had responsibility for giving advice on discipline and promotions in the department, was particularly chilling because it indicated that Black Officers would not receive fair treatment.

After Caulfield returned to work without incident, the Black Officers launched a series of public protests (the last of which occurred in November 2000) that ultimately led to the filing of the instant lawsuit." See Exhibit II USCBPA dated October 23, 2000, opposing unlawful employment practices on November 06, 2000. Attached herein.

14

This type of behavior was often condoned, encouraged, and lacked accountability which altered the condition of Plaintiff Peterson and other black officers work environment.

The U.S. Supreme Court in Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993) requires a plaintiff pleading a hostile work environment claim to show that he was exposed to "discriminating, intimidating, ridicule, and insult" that is sufficiently severe or pervasive to alter the condition of the victim's employment and created an abusive working environment.' "Id. (citation omitted) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). To assess a claim of hostile work environment the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threating or humiliating, or a mere offensive utterance and whether it unreasonably interferes with a employees work performance." Id. at 23.

Plaintiff Peterson is confident discovery will reveal evidence of systemic racist acts committed by the Defendants against black officers.

## Conclusion

Plaintiff Peterson has satisfied the threshold burden of providing sufficient facts which if taken as true, would state a claim upon which relief can be granted. Plaintiff Peterson plead facts sufficient to support a reasonable inference that the Defendant engaged in alleged discriminating conduct in violation of the Congressional Accountability Act (CAA). For the reasons set forth herein and in the interest of justice, Plaintiff Peterson respectfully requests that this Honorable Court deny the Defendants Partial Motion to Dismiss and grant plaintiff such relief as deemed just and proper. Plaintiff Peterson hereby request a timely discovery in this matter.

Respectfully submitted,

LUTHER S. PETERSON, JR.
1359 E Street S.E.
Washington, DC 20003

May 10th, 2023

## CERTIFICATE OF SERVICE

I, Pro Se Plaintiff Luther S. Peterson, Jr., do hereby certify that on May _10 th_, 2023,

the foregoing Memorandum in Opposition to Defendants Partial Motion to Dismiss

Plaintiff Luther S. Peterson, Jr's., claims, and proposed ORDER was electronically served on

the following:

Thomas W. Duffey
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, D.C. 20530
Thomas.Duffey@usdoj.gov

A. Marques Pitre
1300 Pennsylvania Avenue NW, Suite 700
Washington, DC. 20004
Ampitre@ampitreassociates.com

Additionally, the below listed unrepresented plaintiffs identified in this civil action will

be served via U.S. postal first-class mail.

FRANK ADAMS
5817 South Marwood Blvd.
Upper Marlboro, MD. 20772

AVE MARIE HARRIS
5404 Stratford Lane
Temple Hills, MD 20748

DANNY L. MCELROY

17

7102 Meadow Rue Terrace
Upper Marlboro, MD 20772


FRANK W. WILKES
8907 Hardesty Drive
Clinton, MD 20735

GOVERNOR LATSON, JR,
1116 Silver Oaks Court
Raleigh, NC 27614

KENDRICK A. YOUNG
10114 Georgian Lane
Upper Marlboro, MD 20772

LEONARD ROSS
9379 Principal Lane
Waldorf, MD 20603

REGINA BOLDEN-WHITAKER
5812 Jackies Way
Clinton, MD 20735

RICHARD WEBB
10752 Green Mountain Circle
Columbia, MD 21044

SANDRA BROWN-JAMES
3815 Butler Springs Drive
Loganville, GA 30052

TAMMIE D. GREEN
30 Regency Drive
Stafford, VA 22554

TYRONE BROOKS
1310 Arethusa Lane
Upper Marlboro, MD 20772-4367

DUVALL PHELPS
8920 Continental Place
Landover, MD 20785

KEVIN MATTHEWS, SR.
2507 32nd Street, S.E.
Washington, DC 20020


BRENT MILLS
10807 Sugar Maple Terrace
Upper Marlboro, MD 20774


SHARON BLACKMON-MALLOY
2525 36th Street S.E.
Washington, DC 20020



Respectfully submitted,

LUTHER S. PETERSON, JR.
1359 E Street S.E.
Washington, DC 20003



May ___10___, 2023